UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ANDY JAMES,

                Plaintiff,

   -against-

CITY OF NEW YORK, and
LANDREY CHERENFANT,

              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff Andy James, by his attorneys, Lumer Law Group, as and for his Complaint, hereby alleges as follows, upon information and belief:

## PARTIES, VENUE and JURISDICTION

1. At all times hereinafter mentioned, plaintiff was an adult male and a resident of the State of New York.

2. At all relevant times hereinafter mentioned, defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

3. At all relevant times hereinafter mentioned, defendant Landrey Cherenfant was employed by the City of New York as a member of the NYPD. Cherenfant is sued herein in his individual capacity.

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331,

1343 and 1367, and 42 U.S.C. § 1983.

5. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Eastern District of New York, where the defendant City of New York resides, and where the majority of the actions complained of herein occurred.

6. Plaintiff timely served a Notice of Claim on the municipal defendant and complied with all conditions precedent to commencing an action under law.

7. At least thirty days have elapsed since service of plaintiff's Notice of Claim and adjustment and payment thereof has been neglected or refused.

8. The within action has been initiated within one year and ninety days of the happening of the events of which plaintiff complains.

## RELEVANT FACTS

9. On June 6, 2017, at or about 4:30 p.m., plaintiff was lawfully present on Remsen Avenue and Avenue K where he was traveling in a vehicle.

10. Plaintiff parked the vehicle at the curb, at which time several NYPD vehicles pulled up.

11. Plaintiff was ordered out of the vehicle and immediately seized.

12. Plaintiff was then handcuffed and arrested.

13. At no time was there any legal basis to arrest plaintiff, nor would it have been reasonable to believe that such legal cause existed.

14. Plaintiff did not resist his arrest.

15. Following his arrest plaintiff was transported to a local area NYPD station house, where he was imprisoned for hours while his arrest was processed.

16. Plaintiff was later transported to Central Booking, where he was imprisoned for many more hours.

17. While plaintiff was in defendants' custody, Cherenfant completed, or caused to be completed, arrest paperwork in which he falsely claimed that plaintiff engaged in criminal or unlawful conduct, such as (i) changing lanes while driving without properly signaling; (ii) operating a motor vehicle without permission of the custodian of the vehicle; and (iii) possession of a forged debit card.

18. Each of these allegations was materially false, as Cherenfant must have known.

19. At no time while operating the vehicle in which plaintiff was seized did plaintiff change lanes, and thus Cherenfant could not have observed plaintiff change lanes without signaling.

20. At no time did the custodian of the vehicle ever claim that plaintiff lacked authority to operate the vehicle.

21. At no time did plaintiff possess a forged debit card, as the only debit card in his possession at the time of his arrest was a card for his own account that he had owned for a period of years.

22. While plaintiff was in defendants' custody, Cherenfant forwarded, or caused to be forwarded, the arrest paperwork containing these materially and fundamentally

false allegations to the Kings County District Attorney's office ("KCDA").

23. Cherenfant communicated this falsified narrative to the KCDA to purpose to justify plaintiff's unlawful arrest and to persuade the KCDA to commence plaintiff's criminal prosecution.

24. Upon information and belief, shortly after this information was forwarded to the KCDA, Cherenfant spoke with the KCDA about the paperwork he had caused to be submitted, and confirmed his fabricated narrative in order to ensure that the KCDA would initiate the prosecution.

25. Cherenfant was able to successfully persuade the KCDA to proceed, and on June 6, 2017, the KCDA provided Cherenfant with a proposed criminal complaint grounded entirely on facts which Cherenfant either claimed to have personally witnessed, or information provided by a person named Alex McFadden.

26. Plaintiff was arraigned on charges of failing to signal while changing lanes, unauthorized use of a vehicle, and possession of a forged instrument, on or about June 7, 2018, and prosecuted thereafter under Docket 2017KN032196.

27. McFadden subsequently provided a written Waiver of Prosecution form in which he stated unequivocally that Cherenfant's reports were false.

28. Plaintiff was obligated to return to criminal court on numerous occasions until, at his appearance on October 20, 2017, he agreed to an ACD with the express provision that the charges were all immediately dismissed.

29. At no time did defendants have sufficient legal cause to arrest and

imprison plaintiff, nor was it reasonable for defendants to believe such cause existed.

30. That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

31. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

32. Defendant willfully and intentionally seized, searched, detained, and arrested plaintiff, and caused him to be imprisoned, without probable cause, and without a reasonable basis to believe such cause existed.

33. Plaintiff had not been engaged in any criminal conduct, nor was he engaged in any conduct that could reasonably be viewed as criminal.

34. Despite the absence of sufficient legal cause, plaintiff was arrested and jailed.

35. By so doing, the individual defendant subjected plaintiff to false arrest and imprisonment, and thereby violated and aided and abetted in the violation of plaintiff's rights under the Fourth Amendment of the United States Constitution.

36. By reason thereof, the individual defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, physical injuries, and mental anguish.

## SECOND CAUSE OF ACTION

37. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

38. Defendant Cherenfant willfully and intentionally fabricated evidence by falsely memorializing claims to have witnessed plaintiff engage in any criminal or unlawful activity, or that Alex McFadden made any such statements to him, and then forwarding these materially false claims to the KCDA in order to justify their arrest of plaintiff, and to justify, bring about and cause plaintiff to be deprived of his liberty and to be criminally prosecuted.

31. By so doing, Cherenfant subjected the plaintiff to the denial of a fair trial and violation of his right to due process fabricating evidence and otherwise providing prosecutors with a materially false and misleading version of events, and thereby violated plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

39. By reason thereof, the individual defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, physical injuries, and mental anguish.

## THIRD CAUSE OF ACTION

40. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

41. Defendant Cherenfant willfully, deliberately, and maliciously caused the

initiation of plaintiff's criminal prosecution by presenting the KCDA with a materially misleading version of facts grounded in fabricated evidence, and continuing to maintain this false narrative until the case was eventually dismissed.

42. By so doing, Cherenfant caused plaintiff to be maliciously prosecuted, and thereby violated plaintiff's rights under the Fourth Amendment of the United States Constitution.

70. By reason thereof, the individual defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, physical injuries, and mental anguish.

**FOURTH CAUSE OF ACTION**

43. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

44. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

45. Cherenfant's actions in this matter – necessarily condoned by and carried out with the approval of his fellow officers and supervisors – were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

46. The purpose of this policy or plan was to generate large numbers of

arrests to help the NYPD create a false impression of positive activity by their officers.

47. Members of the NYPD have a demonstrated history of making wholesale arrests in response to, and motivated by, the NYPD's insistence on quotas, which the NYPD seeks to disguise by recasting this naked demand for a monthly minimum of arrests under the term, "activity" or "activity level."

48. Member of the NYPD, including Cherenfant, were, at all relevant times herein, evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria. Thus, members of the NYPD routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

49. The NYPD generally tracks the number of arrests made by each officer but does not take into account the outcome of these arrests, even though this information is available to the NYPD. As a result, officers are well aware that (a) they are being evaluated based on, in large part, the number of arrests made, and (b) their supervisors do not care whether these arrests lead to criminal prosecutions, much less convictions.

50. More precisely, under this policy or plan, officers are encouraged or pressured to make as many arrests as possible, which has caused and will continue to cause, its officers, including the individual defendants and their colleagues, to make arrests regardless of whether there was any factual basis for the charges. The officer(s) would then fabricate claims of having seen the person(s) being arrested in possession of weapons or

illegal narcotics or otherwise engaged in criminal activity.

51. Upon information, this policy was in existence as of April 4, 2014, as codified in an October 17, 2011, Police Officer Performance Objectives Operation Order in which NYPD Commissioner Kelly directed all commands that, "Department managers can and must set performance goals" relating to the "issuance of summons, the stopping and questioning of suspicious individuals, and the arrests of criminals."

52. Upon information and belief, that same Operation Order stated, "uniformed members. . . .Who do not demonstrate activities . . . or who fail to engage in proactive activities . . . will be evaluated accordingly and their assignments re-assessed."

53. In the case of *Floyd v City of New York*, 813 F. Supp. 2d 417, 448 (S.D.N.Y.) on reconsideration, 813 F. Supp. 2d 457 (S.D.N.Y. 2011), United States District Judge Shira A. Scheindlin denied the City of New York's motion for summary judgment, in part, based on evidence that the NYPD had a widespread practice of imposing illegal stop and frisk, summons, and arrest quotas on officers. The evidence cited in *Floyd*, included testimony from various officers, audio recordings of roll call meetings in which precinct commanders issued orders to produce certain numbers of arrests, stops and frisks, and summonses, and a labor grievance on behalf of six officers and one sergeant who were transferred out of the same 75 precinct where plaintiff was arrested for allegedly failing to meet a monthly ten-summons quota. In January 2006, a labor arbitrator found that this same 75 precinct had imposed summons quotas on its officers in violation of New York State labor laws.

54. In another Southern District of New York case, *Schoolcraft v. City of New York*, 10 CV 6005 (RWS), the plaintiff, a police officer assigned to Brooklyn's 81 precinct alleged that precinct commanders and supervisory personnel expressly imposed arrest and summons quotas, and explicitly directed officers to "arrest and summons fully innocent people" and then come up with a justification later.

55. In 2012, Police Officer Craig Matthews commenced *Matthews v. City of New York*, 12 CV 1354 (BSJ) in the Southern District of New York, alleging that his complaints that the existing quota system was leading to unjustified stops and arrests, and thereby causing damage to the department's relationship with the local community led to his termination. There was little dispute that he made these complaints or that they were well founded. *See Matthews v. City of New York*, 779 F.3d 167, 169 (2d Cir. 2015).

56. That this plan is still in effect is reflected in a class action suit apparently filed in August 2015 by various police officers alleging that the NYPD still requires officers to meet fixed numerical goals for arrests and court summonses each month, according to a New York Times article published February 18, 2016, which can be found online at http://nyti.ms/1R9FCGu.

57. The policy or plan was kept in effect through the date of plaintiff's arrest, despite the municipal defendant's knowledge that county prosecutors were often not charging the individuals arrested, or otherwise not actively pursuing their prosecutions, or that there was insufficient evidence to justify the arrests and illegal searches, or that the arresting officers were seeking to bolster the arrests with false allegations, and that the

prosecutors often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

58. By maintaining such a quota system, the NYPD has created a system by which officers are sufficiently pressured to make arrests such that they will be compelled to do so even when such arrests should not be made or where there is objectively no lawful basis for such an arrest.

59. The NYPD's insistence on maintaining this system reflects a deliberate indifference to the likelihood that police officers will succumb to the pressure to make arrests, regardless of whether probable cause exists for said arrests, which will result in unjustified and unlawful arrests, such as what occurred here.

60. By reason thereof, the municipal defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, physical injuries, and mental anguish.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against defendants Cherefant and the City of New York as follows:

i. actual and punitive damages against the individual defendant in an amount to be determined at trial;

ii. actual damages in an amount to be determined at trial against the City of New York;

iii. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

iv. such other relief as the Court deems just and proper.

Dated: New York, New York
        June 24, 2018

                          LUMER LAW GROUP
                          Attorneys for Plaintiff

                          Michael Lumer, Esq.
                          225 Broadway, Suite 2700
                          New York, New York 10007
                          (212) 566-5060